Virginia W. SPERRY, Special Administrator of the Estate of Paul A. Munn, Deceased, and Ida Munn, Plaintiffs-Appellants,

v.

Edwin R. BARGGREN and Edwin D. Barggren, Defendants-Appellees.

No. 74–1900.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1975.

Decided Sept. 2, 1975.

Rehearing Denied Sept. 17, 1975.

David L. Walther, Milwaukee, Wis., Richard W. Westring, Green Bay, Wis., for plaintiffs-appellants.

William B. Graves, Milwaukee, Wis., for defendants-appellees.

Before TONE and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*

TONE, Circuit Judge.

This is an appeal from a summary judgment sustaining the defense of the statute of limitations in an action under section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), and S.E.C. regulation 10b–5, 17 C.F.R. § 240.10b–5. The principal question presented is whether there is a genuine issue of fact requiring trial.

The pleadings, depositions, and affidavits show the following uncontroverted facts:

The late Paul Munn was employed for many years as a factory foreman by Badger Manufacturing Company of Marinette, Wisconsin. When he retired from that employment in 1964 at the age of 73, he and his wife Ida owned 226 shares of the company's stock. Shortly after his retirement the Munns moved to Florida, where they remained, except for summer vacations in North Carolina, until Mr. Munn's death in 1973.

Edwin D. Barggren owned approximately 70 per cent of Badger's stock. In 1966, his son, Edwin R. Barggren, who was vice president of Badger, visited the Munns in Florida to discuss the possibility of purchasing their stock. Following a series of preliminary negotiations, a contract was entered on May 22, 1967, providing that the younger Barggren would purchase 26 shares of the Munns' stock by June 15 for $200 per share and would be given an option to purchase the remainder of the stock at the same price over the next five years.

In the meanwhile, a subsidiary of Safeguard Industries, Inc. became interested in the possible acquisition of Badger. Initial contacts were made in April of 1967, negotiations were concluded by the end of July, and a purchase agreement was signed on August 2, 1967. Under its terms, Safeguard agreed to purchase the stock of both Barggrens and that held by two other Badger employees for $781 per share. As part of the same transaction, the younger Barggren assigned to Safeguard his rights to purchase the Munns' stock. Shortly before the closing date of August 15, the elder Barggren at the request of the president of Safeguard, asked the Munns whether they would be willing to sell their stock for a single lump sum payment rather than by installments. The Munns subsequently agreed to this request and the stock was sold to Safeguard for $200 per share, discounted to present value.

The total purchase price paid by Safeguard for all Badger stock was $1.5 mil-

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

lion. The sale was publicly announced on August 3 in a Wisconsin local newspaper, the *Marinette Eagle Star*, in a story which carried no mention of the price; on August 11 in *Moody's Industrials*, a national financial publication, which carried a four-line account indicating the purchase price to be "over $1,000,000"; and on August 25 in the *Milwaukee Sentinel* in a story referring to the acquisition as "a $1 million transaction." None of the news accounts mentioned the price per share of the stock being sold or the total number of shares subject to sale.

The Munns filed this action against the Barggrens on March 14, 1972, more than four and a half years after the sale of their stock, for violation of section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), and regulation 10b–5, 17 C.F.R. § 240.10b–5, based on defendants' failure to disclose facts relevant to the value of their shares. Paul Munn having died during the pendency of this action, his personal representative has been substituted as a party. In their original and two amended complaints, plaintiffs alleged, among other things, that they had knowledge of the material facts of the Safeguard negotiations as of August 25, 1967. They later denied this allegation by affidavits, asserting that they did not learn, and with the exercise of due care could not have learned, of the alleged fraud until August of 1970, when a Badger employee told Paul Munn about the story of the transaction he had read in a Wisconsin newspaper several years earlier. The contrary allegations contained in the complaints are erroneous, say the plaintiffs, and were carelessly included in the pleadings at a time when the date of discovery was thought to be unimportant. It was not until *Kramer v. Loewi & Co., Inc.*, 357 F.Supp.

83 (E.D.Wis.1973), decided after the pleadings were drafted, that Wisconsin's three-year limitation period, rather than its general six-year statute of limitations for fraud, was held to apply in 10b–5 actions.[1] The defendants similarly assumed the longer limitation period to be applicable and did not seek to include the statute of limitations as a defense in their amended answer until January of 1974.

Shortly after amending to allege the limitations defense, the defendants filed a motion for judgment on the pleadings based upon that defense. The District Court, at the plaintiffs' request, treated this as a motion for summary judgment accepted supporting documentation from both sides,[2] found that the Munns, with the exercise of due care, could have discovered the alleged fraud before March 14, 1969, the date three years prior to the filing of the complaint, and held that the action was barred.

After a careful review of the record we have concluded that a genuine issue of material fact exists and that the entry of summary judgment was error. We therefore remand the case for trial.

Under the equitable tolling doctrine, which "is read into every federal statute of limitation," *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946), "including state statutes adopted by federal law," *Morgan v. Koch*, 419 F.2d 993, 997 (7th Cir. 1969), when fraud has been concealed "or is of such a nature as to conceal itself, the statute of limitations is tolled until the plaintiff has obtained knowledge of the fraud or in the exercise of due care should have obtained knowledge of the fraud." *Hochfelder v. Midwest Stock Exchange*, 503 F.2d 364, 375 (7th Cir.

---

1. The timeliness of a suit brought under a federal statute which provides no time limitation of its own is determined by reference to the appropriate state statute of limitations. See *International Union, United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–704, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Since neither party contests the correctness of the *Kramer* holding, we assume its validity.

2. The District Court's action in requesting material outside the record was tantamount to denying defendants' motion for judgment on the pleadings as such but treating it as a motion for summary judgment. The defendants, by submitting supporting documentation, acquiesced in this procedure, and we reject their contention that the court erred in so proceeding.

1974), *cert. denied,* 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974). See also *Holmberg, supra,* 327 U.S. at 396–397, 66 S.Ct. 582, 90 L.Ed. 743; *Baily v. Glover,* 88 U.S. (21 Wall.) 342, 547–348, 22 L.Ed. 636 (1875); *Morgan, supra,* 419 F.2d at 997–998. One issue before the District Court was thus the presence or absence of concealment. Should active concealment be found, then the statute is tolled until actual discovery. *Tomera v. Galt,* 511 F.2d 504, 510 (7th Cir. 1975); see also *Goldstandt v. Bear, Stearns & Co.,* 522 F.2d 1265 (7th Cir. 1975). If no active concealment is present, then the issue becomes whether knowledge of the alleged fraud could reasonably have been acquired before March 14, 1969, with the exercise of due care. See *Tobacco and Allied Stocks, Inc. v. Transamerica Corp.,* 244 F.2d 902, 904 (3d Cir. 1957). These are issues of fact. The existence of a fiduciary relationship, moreover, may have had the effect of lessening the plaintiff's duty of inquiry. See *Amen v. Black,* 234 F.2d 12, 25–26 (10th Cir. 1956), *remanded on other ground,* 355 U.S. 600, 78 S.Ct. 530, 2 L.Ed.2d 523 (1958).

Based largely upon the newspaper accounts mentioned above, the District Court concluded that there was no genuine issue as to whether the plaintiffs "could and should have learned the relevant facts earlier than March 14, 1969." We cannot agree. The District Court, it appears to us, placed undue emphasis upon the mere existence of these rather brief news items, two of which appeared only in Wisconsin papers, without considering the lack of any factor which might have alerted an average shareholder residing in Florida to be wary. As noted above, none of the articles indicated the share price or the number of shares outstanding and would thus not necessarily have put the Munns on notice even if they had read them. We note also the difficulty, as related in his affidavit, which the Munns' attorney had in obtaining information about the Safeguard purchase, a difficulty which led him to conclude that the only way to obtain additional needed information was to start a suit and take the Barggrens' deposition, and which, if not in itself evidence of actual concealment, is at least an indication of the trouble which persons in the position of a typical shareholder would have had in obtaining information. Finally, the District Court gave little or no consideration to the nature of the fiduciary relationship existing between the defendants and plaintiffs, as officers and shareholders, at the time of the transactions in question. We are not unaware of statements in affidavits submitted by defendants regarding the accessibility of information, but issues of fact must be resolved by trial and not by affidavits.

The admissions of knowledge prior to the three-year period in the original and amended complaints will, of course, be admissible in evidence against plaintiffs at the trial, but they are not conclusive. Plaintiffs will be entitled to attempt to explain these admissions, and the trier of fact will judge the truth of these explanations and weigh these admissions together with the other evidence.

Reversed and remanded.