Edward COHEN, Alfred Cohen, Michael Cohen, the Estate of Judson Cohen, the Estate of Arthur Shapiro, Helen Shapiro, William Russell Shapiro, Alice Russell Shapiro, David Robbins and Lucille Robbins, Individually and as Limited Partners of certain California Limited Partnerships, Plaintiffs,

v.

Bruce McALLISTER and BMI Energy, Ltd., Individually and as General Partners of BMI/Washington 1980–II, BMI/Martha 1980–III, BMI/George 1981–I and BMI/Adams 1981–II, California Limited Partnerships, Defendants.

Civ. A. No. 87–90 Erie.

United States District Court, W.D. Pennsylvania.

Nov. 12, 1987.

Andrew J. Conner, Dunn & Conner, Erie, Pa. (Hodgson Russ Andrews Woods & Goodyear, of counsel, Buffalo, N.Y.), for plaintiffs.

Gilmür R. Murray, San Francisco, Cal., John G. Gent, Erie, Pa., Ralph L. Halpern, Buffalo, N.Y., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

### I. Background

This suit concerns alleged misrepresentations made to the plaintiffs regarding the purchase of limited partnership interests in partnerships formed to explore for and develop oil and gas properties in Erie and Crawford counties. The plaintiffs allege that they first discussed investment in these partnerships, sponsored by defendants Bruce McAllister and BMI Energy, Ltd. ["BMI Energy"], in 1980. They made their first investments in September, 1980. They made subsequent investments in the defendants' other limited partnerships in November of 1980, as well as in March and June of 1981.

The plaintiffs allege that before and after their purchases, defendant Bruce McAllister repeatedly misrepresented the risks inherent in their investments. McAllister allegedly assured the plaintiffs that the limited partnerships had entered into contracts with two gas purchasers, National Fuel Gas Supply Corporation ["National Fuel"] and Columbia Gas Transmission Corporation ["Columbia Gas"]. McAllister allegedly represented that these gas purchase contracts included "take-or-pay" provisions which eliminated "marketing risk." This meant that while there were "exploration risks," i.e., that the partnerships' wells might not strike gas in economically producible quantities, there were no "marketing risks" that the partnerships would not be able to find a purchaser for its gas at a price sufficient to generate an acceptable return on investment. The plaintiffs claim that while they were willing to accept "exploration risk," they relied on McAllister's oral representations that there would be no "marketing risk." They assert that they would not have made these investments if they had been aware that there were "marketing risks."

In 1982 and early 1983, the market for natural gas weakened and National Fuel allegedly informed the defendants that it would not take any more gas from partnership wells. National Fuel also refused to pay for partnership gas not taken. Amended Complaint, par. 30. In early 1983, National Fuel offered to resume gas purchases only if the partnerships would agree to reduce prices and modify the gas purchase contract to permit renegotiation of the price in the event of gas deregulation. Amended Complaint at par. 31. McAllister and BMI Energy acceded to these demands. Amended Complaint at par. 32. Columbia Gas, the partnerships' other gas purchaser, demanded and received similar

concessions. Amended Complaint at par. 33. Plaintiffs allege that the interruptions in gas sales and the later concessions caused a drastic decline in partnership revenues and the value of their limited partnership interests.

Plaintiffs' complaint alleges that McAllister and BMI Energy made no attempt to enforce the "take-or-pay" provision in the gas purchase contract for the payments due for the period when National Fuel refused to take the partnerships' gas. Amended Complaint at par. 32. Plaintiffs assert that this was because there were in fact no "take-or-pay" provisions in the gas purchase agreements, and that McAllister had no reasonable basis for making such a representation. Amended Complaint at par. 34–35. McAllister wrote two letters to partnership investors on January 20 and February 9, 1983 informing them of National Fuel's demands and his decision on behalf of the partnerships to agree to the concessions. Amended Complaint at par. 40. In these letters, McAllister represented that National Fuel's demands were a flagrant breach of the valid and binding "take-or-pay" provision in the gas purchase contract, but that business conditions required the partnerships to accede. *Id.*

The plaintiffs filed their complaint on April 15, 1987. The amended complaint includes causes of action under: (1) Pennsylvania common law of fraud; (2) section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission; (3) section 352–c of the New York General Business Law (plaintiffs allege that the misrepresentations took place in New York and California); (4) section 25401 of the Corporate Code of the California Corporate Securities Law (BMI Energy and the limited partnerships were allegedly organized under California law); (5) title 70, section 1–401 of the Pennsylvania statutes; (6) breach of fiduciary duty; and (7) breach of contract.

Defendants Bruce McAllister and BMI Energy have yet to answer the plaintiffs' amended complaint. Defendants have moved to dismiss the action under federal rule 12(b)(6) on the grounds that: (1) plaintiffs' section 10(b) and Rule 10(b)–5 claims are barred by a one year statute of limitations; (2) the section 10(b) and Rule 10(b)–5 claims of plaintiffs Lucille Robbins and David Robbins fail to allege fraud with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure; (3) if the court dismisses the plaintiffs' section 10(b) and Rule 10(b)–5 claims, then all the remaining pendant state claims should be dismissed for lack of jurisdiction; (4) the California securities law claim and the claim under title 70, section 1–401 of the Pennsylvania statutes are barred by their respective statutes of limitations; and, (5) the claims of the estates of Millard Cohen, Judson Cohen and Arthur Shapiro should be dismissed because the estate of a deceased person is not a proper party under Pennsylvania law.

The plaintiffs have made a cross-motion to further amend their complaint: (1) to substitute Andrew M. Cohen and Jacob Falkenstein, executors of the Estate of Millard Cohen, as plaintiffs in place of the Estate of Millard Cohen; (2) to substitute Howard Klein, Murray Cohen and Janice Cohen, executors of the Estate of Judson Cohen, as plaintiffs in place of the Estate of Judson Cohen (this Court has subsequently approved the voluntary dismissal of the Estate of Judson Cohen as a party to this action); (3) to substitute William Russell Shapiro and Helen Shapiro, executors of the Estate of Arthur Shapiro, as plaintiffs in place of the Estate of Arthur Shapiro; (4) to set forth specific facts describing the manner in which plaintiffs David Robbins and Lucille Robbins became aware of the alleged misrepresentations.

## II. Discussion

### A. *The Statute of Limitations For The Plaintiffs' Claims Under Section 10(b) and Rule 10(b)–5*

The defendants move for dismissal of the section 10(b) and Rule 10(b)–5 claims on the grounds they are barred by a one year statute of limitations applicable under Pennsylvania's blue sky securities law. Plaintiffs insist that these claims enjoy a six year limitation under the Pennsylvania

common law of fraud, and that the defendant's fraudulent concealment of their fraud tolled the statute of limitations until such time as the plaintiffs had actually discovered the fraud.

### 1. Borrowing The Appropriate Statute Of Limitations For § 10(b) and Rule 10(b)–5 Claims

Federal law does not specify a limitation on actions brought under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), or Rule 10(b)–5, 17 C.F.R. § 240.10(b)–5, promulgated thereunder. Because federal law does not provide a statute of limitations, this Court looks to the law of the forum state, Pennsylvania, to "borrow" the appropriate period of limitation.[1] *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976). A federal court must determine which state limitations period is most analogous to the federal claim. *Johnson v. Railway Express Agency,* 421 U.S. 454, 464, 95 S.Ct. 1716, 1722, 44 L.Ed. 2d 295, 303 (1975).

Determining which forum state limitations period is most analogous to the federal claim requires an analysis fraught with ambiguity. The Third Circuit has held that a court must begin this determination by inquiring "whether, assuming the operative facts alleged in the complaint, a state court would entertain an action for the relief sought." *Roberts v. Magnetic Metals Co.,* 611 F.2d 450, 452 (3rd Cir.1979). Courts have since endeavored to pour the alleged facts underlying federal § 10(b) claims into the vessels of analogous state causes of action. Because there is no precise counterpart in Pennsylvania law to § 10(b), any analogy is bound to be imperfect. The result is uncertainty among potential plaintiffs and defendants as to the timeliness of § 10(b) claims, this threshold issue left unsettled until the attorneys complete their arguments by analogy and the courts sift the facts of each case to discern the state law which would most closely govern the plaintiffs' claim.

The United States Supreme Court has recognized the problems inherent in borrowing state limitations periods when the federal claim differs from the state cause of action. In *Wilson v. Garcia,* the Supreme Court had to choose the proper limitations period for an action filed in a federal court in New Mexico under 42 U.S.C. § 1983. 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Court noted that the case-by-case, fact-based analysis "inevitably breeds uncertainty and time-consuming litigation...." *Id.* at 272, 105 S.Ct. at 1945, 85 L.Ed.2d at 264.[2] The Court in *Wilson v. Garcia* established a three-part inquiry to guide the selection of the statute of limitations that will govern a federal

---

**1.** This is not a hard and fast rule. The Supreme Court has stated that where there is not an obvious state law choice for application to a given federal cause of action:

[W]hen a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law. *DelCostello v. Teamsters,* 462 U.S. 151, 171–172, 103 S.Ct. 2281, 2294–95, 76 L.Ed.2d 476 (1983) (the six month statute of limitations period in § 10(b) of the National Labor Relations Act, and not the shorter state limitations for actions to vacate arbitration awards, governs claims of breach of duty of fair representation); *see also Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (adopting federal statute of limitation for EEOC enforcement actions); *McAllister v. Magnolia Petroleum*

*Co.,* 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958) (federal limitations period applied to unseaworthiness action under general admiralty law).

**2.** Justice Stevens' majority opinion observed that:

If the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitation should apply to each § 1983 claim. Moreover, under such an approach different statutes of limitations would be applied to the various § 1983 claims arising in the same State, and multiple periods of limitations would often apply to the same case. There is no reason to believe that Congress would have sanctioned this interpretation of its statute. *Wilson v. Garcia,* 471 U.S. at 273–274, 105 S.Ct. at 1945–46.

claim.[3] The Court directed that a single statute of limitations for all § 1983 claims be selected in each state. *Id.* at 275, 105 S.Ct. at 1947, 85 L.Ed.2d at 266. "[U]niformity within each state is entirely consistent with the borrowing principle contained in [42 U.S.C. § 1988]." *Id.* The Third Circuit has since commented that:

> There is nothing in [*Wilson v. Garcia*] that would suggest that the approach is unique to § 1983 cases. Indeed, it appears to us that the Court intended to mark out a general approach to all statute of limitations borrowing problems.

*Malley–Duff & Associates v. Crown Life Ins. Co.,* 792 F.2d 341, 345 n. 9 (3d Cir. 1986), *aff'd sub nom Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (borrowing the statute of limitations for civil RICO actions from a federal statute, the Clayton Act, rather than state statutes, because the Clayton Act offers the closest analogy to civil RICO). While the Third Circuit has yet to apply the *Wilson v. Garcia* borrowing analysis to determining a state-wide Pennsylvania statute of limitations for claims under § 10(b) or Rule 10(b)–5, it seems that the Third Circuit will need to appraise its previous case-by-case approach in light of the Supreme Court's directive in *Wilson v. Garcia.*

Applying the *Wilson v. Garcia* analysis, we must: (1) consider "whether state law or federal law governs the characterization" of the claim for statute of limitations purposes; (2) if we decide that federal law applies, we must then decide whether all § 10(b) and Rule 10(b)–5 claims "should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case;" (3) "characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." *Wilson v. Garcia,* 471 U.S. at 268, 105 S.Ct. at 1943; *see also Malley–Duff & Associates v. Crown Life Ins. Co.,* 792 F.2d 341, 345 (3rd Cir.) *aff'd sub nom Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

■ The characterization of a federal claim for statute of limitations purposes is generally a question of federal law. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* —— U.S. at ——, 107 S.Ct. at 2762; *see also Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192, 200 (1966); *Malley–Duff & Associates,* 792 F.2d at 346. The next inquiry is whether all claims arising out of § 10(b) and Rule 10(b)–5 should be characterized the same way. We note that the case-by-case determination of limitations periods applied in this circuit over the years has created much the same "uncertainty and time-consuming litigation" the Supreme Court noted with § 1983 actions in *Wilson v. Garcia.* Federal courts in this circuit have applied the varying limitations periods from common law fraud or state blue sky laws for § 10(b) and Rule 10(b)–5 claims, their determinations often turning on technical distinctions of factual or legal theory. *See, e.g., Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605 (3rd Cir.1980) (applying common law of fraud statute of limitations rather than that of Pennsylvania securities law); *Roberts v. Magnetic Metals Co.,* 611 F.2d 450 (3rd Cir.1979) (applying common law of fraud rather than New Jersey securities law); *Bull v. American Bank and Trust Co. of Pa.,* 641 F.Supp. 62, 66–67 (E.D.Pa. 1986) (chooses limitations period from Pennsylvania blue sky law); *Hill v. Der,*

---

3. The Court's three-part inquiry, as applied to § 1983 claims in *Wilson v. Garcia,* is as follows: We must first consider whether state law or federal law governs the characterization of a § 1983 claim for statute of limitations purposes. If federal law applies, we must next decide whether all § 1983 claims should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case. Finally, we must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle. *Wilson v. Garcia,* 471 U.S. at 268, 105 S.Ct. at 1943.

521 F.Supp. 1370 (D.Del.1981) (applying Delaware blue sky limitations period).

A recent decision, *Graham v. Oil Field Systems Corp.*, Civil Action No. 85–3887, slip op. (E.D.Pa., December 11, 1986) [Available on WESTLAW, 1986 WL 14194], illustrates the need for a uniform state statute of limitations for § 10(b) and Rule 10(b)–5. The plaintiff, an investor in drilling programs, brought an action including § 10(b) and Rule 10(b)–5 claims against the drilling programs, the brokers who sold him the interests, and a law firm which prepared offering memoranda. *Id.* The court in *Graham*, attempting to apply existing precedent, applied the Pennsylvania blue sky statute of limitations against the "seller" defendants, the programs, and the common law limitations period against the "broker" defendants, the brokers and the law firm. *Id.* Thus, the § 10(b) and Rule 10(b)–5 claims arising from the same misrepresentations carried much different limitations periods depending on whether the defendants could be characterized as "sellers" or "brokers."[4] *Id.* There is no reason to believe that Congress would have sanctioned multiple periods of limitation applying to federal securities claims arising from the same misrepresentations. *See*

*Wilson v. Garcia*, 471 U.S. at 274, 105 S.Ct. at 1946, 85 L.Ed.2d at 265–266.

We therefore come to the conclusion that all § 10(b) and Rule 10(b)–5 claims should be characterized in the same way in Pennsylvania. We believe that with § 10(b) and Rule 10(b)–5 claims the "federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach." *See Wilson v. Garcia*, 471 U.S. at 275, 105 S.Ct. at 1947, 85 L.Ed. 2d at 266.

### 2. What Are The Periods Of Limitation Which This Court May Borrow From Pennsylvania Law?

■ The final step of the *Wilson v. Garcia* analysis is deciding which Pennsylvania statute cause of action provides the most appropriate limiting principle. Pennsylvania law offers two possibly analogous causes of action from which we may borrow statutes of limitations for § 10(b) and Rule 10(b)–5 claims.[5] One is the anti-fraud section of the Pennsylvania Securities Act. Pa.Stat.Ann. tit. 70 § 1–401 (Purdon Supp. 1987).[6] Section 1–501 of the Pennsylvania

---

**4.** On motions for reconsideration, the court later acknowledged that in some cases courts cannot determine as a matter of law whether certain defendants are "sellers." The court therefore granted the parties 90 days discovery on the elusive "sellers" issue. *See Graham v. Oil Field Systems Corp.*, Civil Action No. 85–3887, slip op. (E.D.Pa., May 6, 1987) [Available on WESTLAW, 1986 WL 14194].

**5.** Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j, reads as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10(b)–5, 17 C.F.R. § 240.10b–5, states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or

instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

**6.** Section 1–401 provides:

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly:

(a) To employ any device, scheme or artifice to defraud;

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Securities Act provides that any person who "offers or sells a security in violation of [§ 1–401]" shall be civilly liable to the person who purchased the security. Section 1–504(a) sets the statute of limitations for a civil action under § 1–401 as either four years from the date of the misrepresentation, or one year from the time the plaintiff knew or should have known of the misrepresentation. 70 Pa.Stat.Ann. tit. 70 § 1–504(a) (Purdon Supp.1987).

The second possibly analogous state cause of action would be under Pennsylvania's common law of fraud. The Third Circuit has held that the statute of limitations for common law fraud claims that accrued between June 27, 1978 and February 18, 1983 is six years. *A.J. Cunningham Packing v. Congress Financial Corp.*, 792 F.2d 330, 332–337 (3rd Cir.1986). After February 18, 1983 the statute of limitations is just two years. *Id.* at 334. The plaintiffs contend that their cause of action accrued in 1980 and 1981, Plaintiffs' Memorandum in Opposition to Defendants' Motion To Dismiss, p. 21 n. 9, and the last act of misrepresentation arguably alleged in their Amended Complaint is a letter sent by Mr. McAllister in February 9, 1983. Therefore, if this Court were to borrow the statute of limitations from Pennsylvania's common law of fraud, that time limit would be six years.[7]

In the final analysis, it is the Third Circuit which must settle the question of which Pennsylvania statute of limitations to choose for § 10(b) and Rule 10(b)–5 claims. In the meantime, we find the Pennsylvania securities laws more analogous to the federal statute and Securities and Exchange Commission rule. One need only look at the nearly identical language in Rule 10(b)–5 and § 1–401 to realize that Congress and the Pennsylvania legislature shared the same, non-conflicting concerns when creating these causes of action. As Judge Sloviter noted in her concurrence in *Roberts v. Magnetic Metals, Inc.*:

Since Congress has recognized the value of the concurrent operation of the federal statute and nonconflicting state securities actions, it would in ordinary circumstances lead us to the application of the statute of limitations provisions in the state securities act.... That would seemingly supply the provision most consonant with and complementary to that of the federal scheme.

611 F.2d 450, 459 (3rd Cir.1979) (Sloviter, J. concurring). We will therefore apply in this case the limitations period contained in § 1–504(a). That is the earlier of four years from the date of the alleged misrepresentation or one year from the time the plaintiff knew or should have known of the misrepresentation.

3. *Have The Plaintiffs' § 10(b) and Rule 10(b)–5 Claims In This Action Been Timely Filed?*

The plaintiffs allege that although the defendants' fraudulent misrepresentations took place in 1980 and 1981, that defendants fraudulently concealed their misrepresentations in the McAllister letters dated January 20th and February 9 of 1983.

Although the limitations period may be borrowed from state law, federal law determines when the period commences to run. *Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605, 607 n. 3 (3rd Cir.1980). Under the federal equitable tolling doctrine, also referred to as the "fraudulent concealment doctrine," the statute does not begin to run until the plaintiff knew or exercising reasonable diligence should have known of the alleged fraud. *Id.* at 608 n. 3; *see generally* Marcus, *Fraudulent Concealment in Federal Court: Toward A More Disparate Standard?*, 71 Geo.L.J. 829 (1983). The Supreme Court first embraced the fraudulent concealment doctrine as a matter of federal common law in *Bailey v. Glover*, 88 U.S. 342, 349–350, 22 L.Ed. 636 (1874).[8] In *Holmberg v. Armbrecht*, Jus-

---

7. In their Memorandum In Opposition To Defendants' Motion To Dismiss, p. 11 n. 4, the plaintiffs represent that the parties entered into an agreement tolling the statutes of limitations

on these claims from August 20, 1986 until April 1, 1987. The defendants have not denied this.

8. The Supreme Court reasoned that "a sound and philosophical view of the principles of the

tice Frankfurter wrote that "[t]his equitable doctrine is read into every federal statute of limitation." 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). Courts have since applied the doctrine to claims under § 10(b). *See, e.g., Robertson v. Seidman & Seidman,* 609 F.2d 583, 593 (2d Cir.1979) ("Under the federal tolling doctrine, the active concealment of fraudulent conduct tolls the statute of limitations until such time as he *actually knew* of the fraudulent conduct of the opposing party.") [emphasis added] (*citing Atlantic City Electric Co. v. General Electric Co.,* 312 F.2d 236, 239 (2d Cir.1962) (en banc), *cert. denied,* 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963)); *see also Sperry v. Barggren,* 523 F.2d 708, 711 (7th Cir.1975) ("Should active concealment be found, then the statute is tolled until actual discovery."); *Engl v. Berg,* 511 F.Supp. 1146, 1151 (E.D.Pa.1981); Comment, *Plaintiff's Duty of Care After* Ernst & Ernst v. Hochfelder, 73 Nw.U.L.Rev. 158, 175 (1978) (tolling doctrine has always applied to actions under § 10(b) and Rule 10(b)–5). Absent active concealment, the limitations period begins to run when plaintiff, through due diligence, could reasonably have discovered the fraud. *Sperry v. Barggren,* 523 F.2d at 711. Thus, if the Court finds that the Defendants concealed their wrongdoing, the statute of limitations applied to the plaintiffs' § 10(b) and Rule 10(b)–5 claims would be tolled until the date the plaintiffs had actually learned of the existence of their claim. If the Court finds no active concealment, then the statute of limitations is tolled until the plaintiffs knew, or should have known with due diligence, of the defendants' misrepresentations.

The federal equitable tolling doctrine thus requires that this Court make a two-pronged determination. First, whether or not the defendants fraudulently concealed the alleged misrepresentations made to the plaintiffs. If we find fraudulent concealment, we must then determine the date on which the plaintiffs actually learned of the misrepresentations. The statute of limita-

tions will begin to run on that date. If we do not find that there has been fraudulent concealment by the defendants, we must then determine the date when the plaintiffs knew or should have known of the misrepresentations, and run the limitations period from that date.

■ Because the statute of limitations question is raised by defendants through a motion to dismiss under Rule 12(b)(6), the Court is required to construe the plaintiffs' complaint in the light most favorable to the plaintiffs, their allegations taken as true. The defendants claim that the Amended Complaint fails to allege the fraudulent concealment with the particularity required by Rule 9(b). Fed.R.Civ.P. 9(b). We disagree, and find that on the face of the pleadings, plaintiffs have alleged fraudulent concealment with sufficient particularity. Plaintiffs have alleged that Mr. McAllister assured them that the partnerships' gas purchase agreements contained "take-or-pay" provisions which removed "marketing risks" from the ventures. They allege that they relied upon that assurance in purchasing limited partnerships and that McAllister's representations as to the existence of "take-or-pay" provisions were false. The amended complaint then alleges that once the gas purchasers threatened not to "take or pay" for partnership gas, threatening exposure of McAllister's alleged misrepresentations, McAllister wrote two letters insisting that the gas purchasers were in violation of the non-existent "take-or-pay" provisions. Viewing the plaintiffs' allegations as true, we find that the January 20 and February 9, 1983 McAllister letters represented active fraudulent concealment of McAllister's alleged misrepresentations.

The Court's next step is to ascertain when the plaintiffs actually learned of the defendants' misrepresentations. We reject the defendants' contention that the plaintiffs knew or should have known of the misrepresentations on receipt of McAllister's January 20 and February 9, 1983 let-

---

statutes of limitation" prohibited applying the bar of limitations in favor of one who had obtained its protection "by concealing a fraud,

or by committing a fraud in a matter that it concealed itself." *Bailey v. Glover,* 88 U.S. at 349, 22 L.Ed. 636.

ters, which we find to have concealed, rather than revealed, the defendants' alleged misrepresentations. Unfortunately, the pleadings do not inform the court on which date plaintiffs became aware of the alleged misrepresentations.

4. *Defendants' Motion To Dismiss On The Grounds That Plaintiffs' § 10(b) and Rule 10(b)–5 Claims Are Time–Barred Is Denied Without Prejudice*

■ Without knowing the date on which the plaintiffs learned of the defendants' alleged misrepresentations, this Court is unable to determine the date from which the statute of limitations contained in § 1–504(a) of the Pennsylvania securities law is to begin running. Under Fed.R.Civ. P. 8(c) the statute of limitations constitutes an affirmative defense. The Third Circuit has held that the limitations defense may be raised on a motion under Rule 12(b)(6) only if "the time alleged *in the statement of a claim* shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3rd Cir.1978) [emphasis in original]. "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.*

Once a defendant has raised the statute of limitations defense under federal securities law, the plaintiff is then under a burden to show that the claim is timely. *Cook v. Avien, Inc.*, 573 F.2d 685, 695 (1st Cir. 1978); *Alvaro v. E.F. Hutton & Co., Inc.*, 606 F.Supp. 1100, 1112 (E.D.Pa.1985). We therefore deny defendants' motion to dismiss without prejudice and plaintiffs will be given 30 days to amend their complaint to include the specific information necessary to this Court to determine whether their claim is barred under the statute of limitations, i.e., the date upon which they learned of the defendants' alleged misrepresentations. Failure to comply strictly with the leave to amend will result in dismissal of the § 10(b) and Rule 10(b)–5 claims on defendants' motion.

B. *Defendants' Motion To Dismiss The Pendant State Claims Is Denied*

The defendants' motions to dismiss included one motion which requested that if the Court dismissed the § 10(b) and Rule 10(b)–5 claims, that the remaining pendant state claims be dismissed for lack of subject matter jurisdiction. As a logical consequence of the denial of the defendants' motion to dismiss the § 10(b) and Rule 10(b)–5 claims, we will also deny defendants' motion to dismiss all the pendant state claims.

C. *Defendants' Motion To Dismiss Lucille Robbins and David Robbins' § 10(b) and Rule 10(b)–5 Claims Is Denied*

Defendants have moved that Lucille Robbins and David Robbins' § 10(b) and Rule 10(b)–5 claims be dismissed because they fail to allege fraud with the particularity required under Fed.R.Civ.P. 9(b). Plaintiffs have made a cross-motion to amend their complaint so as to set forth specific facts describing the manner in which Lucille Robbins and David Robbins became aware of the alleged misrepresentations. We deny the defendants' motion to dismiss and grant the plaintiffs' cross-motion to amend.

D. *Defendants' Motion To Dismiss The Claims Of The Estates Of Millard Cohen, Judson Cohen and Arthur Shapiro*

Defendants have moved to dismiss the claims of the estates of Millard Cohen, Judson Cohen and Arthur Shapiro on the grounds that the estate of a deceased person is not a proper party under Pennsylvania law. The estate of Judson Cohen has since voluntarily dismissed its claim. The plaintiffs have made a cross-motion to amend their complaint to: substitute William Russell Shapiro and Helen Shapiro, executors of the Estate of Arthur Shapiro, as plaintiffs in place of the Estate of Arthur Shapiro; and, substitute Andrew M. Cohen and Jacob Falkenstein, executors of the estate of Millard Cohen, as plaintiffs in place of the estate of Millard Cohen. We

deny defendants' motion to dismiss and grant the plaintiffs' motion to amend their complaint as requested.

E. *Defendants' Motion To Dismiss The California And Pennsylvania Securities Law Claims As Barred By Their Respective Statutes Of Limitations*

Defendants have moved to dismiss the plaintiffs' claims under and § 1–401 of the Pennsylvania securities law and § 25401 of the California Corporate Securities Law, on the grounds that they are barred by their respective statutes of limitations. We note once again that the statute of limitations for claims under Pennsylvania's § 1–401, contained in § 1–504(a), is the earlier of four years from the misrepresentation or one year from the date the plaintiffs knew or should have known of the misrepresentation. The statute of limitations for claims under California's § 25401 is four years. Cal.Corp.Code § 25506 (West 1987 Supp.). However, both Pennsylvania and California have adopted fraudulent concealment doctrines. *See, e.g., Ritter v. Theodore Pendergrass*, 356 Pa.Super. 422, 514 A.2d 930, 935 n. 8 (1986); *Bollinger v. National Fire Ins. Co.*, 25 Cal.2d 399, 406, 154 P.2d 399 (1944). We therefore deny defendants' motions to dismiss without prejudice and, as with the federal securities claims, give the plaintiffs 30 days to amend their complaint to include the specific information necessary for this Court to determine when they learned of the defendants' alleged misrepresentations.

## ORDER

AND NOW, this 12th day of November, 1987, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that:

(1) Defendants' motion to dismiss, pursuant to Rule 12(b)(6), the plaintiffs' claims under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10(b)–5, 17 C.F.R. § 240.10(b)–5, is DENIED without prejudice;

(2) Plaintiffs are given 30 days in which to amend their complaint to include the specific information necessary for this Court to determine whether their claim is barred under the statute of limitations, *i.e.* to set out the date upon which they learned of the defendants' alleged misrepresentations;

(3) Defendants' motion to dismiss, pursuant to Rules 12(b)(6) and 9(b), for failure to allege fraud with sufficient particularity, the claims by Lucille Robbins and David Robbins under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10(b)–5, 17 C.F.R. § 240.10(b)–5, is DENIED;

(4) Plaintiffs' cross-motion to amend their complaint so as to set forth specific facts describing the manner in which Lucille Robbins and David Robbins became aware of the alleged misrepresentations is GRANTED, and they are given 30 days in which to so amend their complaint;

(5) Defendants' motion to dismiss the plaintiffs' pendant state claims for lack of subject matter jurisdiction is DENIED;

(6) Defendants' motion to dismiss the claims of the estates of Millard Cohen and Arthur Shapiro is DENIED;

(7) Plaintiffs' cross-motion to amend their complaint so as to substitute Andrew M. Cohen and Jacob Falkenstein as plaintiffs in place of the Estate of Millard Cohen, and to substitute William Russell Shapiro and Helen Shapiro as plaintiffs in place of the Estate of Arthur Shapiro, is GRANTED;

(8) Defendants' motion to dismiss plaintiffs' claims under § 1–401 of the Pennsylvania Securities Law and § 25401 of the California Corporate Code, as barred by the respective state statutes of limitations, is DENIED without prejudice.