Edward COHEN, Alfred Cohen, Michael Cohen, the Estate of Judson Cohen, the Estate of Arthur Shapiro, Helen Shapiro, William Russell Shapiro, Alice Russell Shapiro, David Robbins and Lucille Robbins, Individually and as Limited Partners of certain California Limited Partnerships, Plaintiffs,

v.

Bruce McALLISTER and BMI Energy, Ltd., Individually and as General Partners of BMI/Washington 1980–II, BMI/Martha 1980–III, BMI/George 1981–I and BMI/Adams 1981–II, California Limited Partnerships, Defendants.

Civ. A. No. 87–90 Erie.

United States District Court,
W.D. Pennsylvania.

June 22, 1988.

Andrew J. Conner, Erie, Pa., Hodgson Russ Andrews Woods & Goodyear, Buffalo, N.Y., for plaintiffs.

John G. Gent, Erie, Pa., Ralph L. Halpern, Buffalo, N.Y., Gilmur R. Murray, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

### I. *Background*

This suit concerns alleged misrepresentations made to the plaintiffs regarding the purchase of limited partnership interests in partnerships formed to explore for and develop oil and gas properties in Erie and Crawford counties. The plaintiffs allege that they first discussed investment in these partnerships, sponsored by defendants Bruce McAllister and BMI Energy, Ltd. ["BMI Energy"], in 1980. They made their first investments in September, 1980. They made subsequent investments in the defendants' other limited partnerships in November of 1980, as well as in March and June of 1981.

The plaintiffs allege that before and after their purchases, defendant Bruce McAllister repeatedly misrepresented the risks inherent in their investments. McAllister allegedly assured the plaintiffs that the limited partnerships had entered into contracts with two gas purchasers, National Fuel Gas Supply Corporation ["NFG"] and Columbia Gas Transmission Corporation ["Columbia Gas"]. McAllister allegedly represented that these gas purchase contracts included "take-or-pay" provisions which eliminated "marketing risk." This meant that while there were "exploration risks," i.e., that the partnerships' wells might not strike gas in economically producible quantities, there were no "marketing risks" that the partnerships would not be able to find a purchaser for its gas at a price sufficient to generate an acceptable return on investment. The plaintiffs claim that while they were willing to accept "exploration risk," they relied on McAllister's oral representations that there would be no "marketing risk." They assert that they would not have made these investments if they had been aware that there were "marketing risks."

In 1982 and early 1983, the market for natural gas weakened and NFG allegedly informed the defendants that it would not take any more gas from partnership wells. NFG also refused to pay for partnership gas not taken. Second Amended Complaint, par. 30. In early 1983, NFG offered to resume gas purchases only if the partnerships would agree to reduce prices and modify the gas purchase contract to permit renegotiation of the price in the event of gas deregulation. Second Amended Complaint at par. 31. McAllister and BMI Energy acceded to these demands. Second Amended Complaint at par. 32. Columbia Gas, the partnerships' other gas purchaser, demanded and received similar concessions. Second Amended Complaint at par. 33. Plaintiffs allege that the interruptions in gas sales and the later concessions caused a drastic decline in partnership revenues and the value of their limited partnership interests.

Plaintiffs' complaint alleges that McAllister and BMI Energy made no attempt to enforce the "take-or-pay" provision in the gas purchase contract for the payments due for the period when NFG refused to take the partnerships' gas. Second Amended Complaint at par. 32. Plaintiffs assert that this was because there were in fact no "take-or-pay" provisions in the gas

purchase agreements, and that McAllister had no reasonable basis for making such a representation. Second Amended Complaint at par. 34–35. McAllister wrote two letters to partnership investors on January 20 and February 9, 1983 informing them of NFG's demands and his decision on behalf of the partnerships to agree to the concessions. Second Amended Complaint at par. 40. In these letters, McAllister represented that NFG's demands were a breach of the gas purchase contract, but that business conditions required the partnerships to accede. *Id.*

The plaintiffs filed their complaint on April 15, 1987.[1] The amended complaint includes causes of action under: (1) Pennsylvania common law of fraud; (2) section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission; (3) section 352-c of the New York General Business Law (plaintiffs allege that the misrepresentations took place in New York and California); (4) section 25401 of the Corporate Code of the California Corporate Securities Law (BMI Energy and the limited partnerships were allegedly organized under California law); (5) title 70, section 1–401 of the Pennsylvania statutes; (6) breach of fiduciary duty; and (7) breach of contract. Defendants Bruce McAllister and BMI Energy have yet to answer the plaintiffs' complaint.

Defendants had previously moved to dismiss all the claims asserted in the First Amended Complaint pursuant to Rule 12(b)(6), arguing that the plaintiffs' only federal cause of action, based on section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 was barred by the statute of limitations. The plaintiffs asserted that because the defendants had concealed their misrepresentations in the January 20 and February 9, 1983 letters, the fraudulent concealment (or equitable tolling) doctrine acted to toll the statute of limitations until the plaintiffs discovered the fraud. Because the plaintiffs had not alleged a date on which they had discover-

ed the fraud, this Court granted the plaintiffs thirty days in which to amend their complaint to specify that date, and in the meantime denied the defendants' motion to dismiss without prejudice. 673 F.Supp. 733.

The plaintiffs have since filed their Second Amended Complaint in which they allege that plaintiff Edward Cohen "first became aware that he had been defrauded as alleged ... in or about March or April, 1986. The other plaintiffs each became aware of the fraud alleged ... when they were contacted by Edward Cohen or his representative." Second Amended Complaint, par. 41. The defendants have now renewed their motion to dismiss the entire action pursuant to Rule 12(b)(6), or in the alternative for summary judgment under Rule 56(b), based on the facts set forth in the sworn affidavits of defendant Bruce McAllister, plaintiff Edward Cohen, and Cohen's attorney Gary Mucci (and attached exhibits). Once again, their motion is based primarily on the assertion that the plaintiffs' federal securities claim is time-barred.

### Findings of Fact

Based on the affidavits filed by both sides, the Court has been able to make findings on a number of facts pertaining to the question of the statute of limitations which are not in dispute between the parties.

The parties agree that McAllister, as general partner of BMI Energy, sent a letter to the plaintiffs on January 20, 1983. Second Amended Complaint, exh. C. In that letter McAllister informed the plaintiffs of a "significant problem that ... developed with the buyer of a large portion of the production from our gas wells in Pennsylvania, National Fuel Gas (NFG)." *Id.*, p. 1. The letter explained that NFG refused to pay the agreed-upon price of approximately $5.50 per mcf., instead offering to pay either $4.00 per mcf. or nothing

---

**1.** The parties entered an agreement tolling the statute of limitations on the plaintiffs' claims from August 20, 1986 until April 1, 1987.

at all. *Id.* McAllister also reported that the partnerships' operator, Meridian Exploration, "have been informed orally that if the terms that NFG has proposed are not agreed to by January 31, NFG's next price offer will be even lower." *Id.* The alleged reference to the take-or-pay provisions was a sentence in the letter's first paragraph which reads: "I believe this action by NFG is a violation of our contract." *Id.*

McAllister sent the plaintiffs another letter on February 9, 1983, reporting that he was unable to secure any concessions from NFG and, heeding the threat of yet harsher terms, he had accepted NFG's demands and production was to begin. McAllister wrote that NFG felt "there is adequate language in the contract to permit them to take this action. Although we do not agree with the latter point, the attorneys consulted by your General Partner could not recommend suing NFG over this issue." Second Amended Complaint, Exhibit E.

Shortly after receiving the January 20 letter, plaintiff Edward Cohen telephoned McAllister to discuss the negotiations between BMI Energy and NFG. Cohen had McAllister sent documents relating to the dispute to Gary Mucci, Cohen's attorney in Buffalo, New York. Cohen Affidavit, par. 10; McAllister Affidavit, par. 12. These materials included the NFG contract, McAllister's correspondence with NFG, and an opinion letter written for BMI Energy by the San Francisco, California, law firm of Howard, Rice, Nemerovski, Canady, Robertson & Falk. McAllister Affidavit, Exhibit G (January 26, 1983 transmission letter from Linda Montoya of BMI Energy to Gary Mucci). At this time Mucci and McAllister also discussed the situation. Cohen Affidavit, par. 11; McAllister Affidavit, par. 13; Mucci Affidavit, par. 6.

The NFG contract evidently contains no "take-or-pay" provision *per se.* The contract preamble contains the following paragraph:

> WHEREAS, Seller desires to sell to Buyer all of the natural gas produced from said tracts of land and Buyer is willing to so purchase the said natural gas within the limits of its requirements and system

capacity all under the terms and conditions hereinafter set forth.

McAllister Affidavit, Exhibit A. Thus, NFG's willingness to purchase all the natural gas BMI produced was qualified by the phrase "within the limits of [NFG's] requirements and system capacity." The opinion letter by Howard, Rice, Nemerovski, Canady, Robertson & Falk noted that "[a]lthough the contract between NFGS and you is somewhat ambiguous as to the quantity of gas NFGS is required to purchase, when read in its entirety the contract does indicate an 'output' contract." McAllister Affidavit, Exhibit C, p. 2. It concluded that if NFG could show an independent non-price reason for not purchasing all the gas produced, it would have to purchase the partnership's gas on a ratable basis with its suppliers other than BMI Energy. *Id.* at p. 10.

## DISCUSSION

### I. *Standard For Motions To Dismiss Under Rule 12(b)(6)*

The defendants have moved for dismissal of the Second Amended Complaint pursuant to Rule 12(b)(6). A motion to dismiss tests the formal sufficiency of the statement of the claim for relief, addressing itself solely to the failure of the complaint to state a claim for relief. Wright & Miller, *Federal Practice And Procedure* § 1356 (1987 Supp.). To merit dismissal, the plaintiff's pleading must fail to meet the liberal requirements for pleading a claim set forth in Rule 8(a), which calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*; Fed.R.Civ.P. 8(b). For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations taken as true. *Id.* at § 1357. In general, a court has broad discretion in ruling on a motion to dismiss, but dismissal should only be granted with care in order to avoid improperly denying plaintiff the opportunity to have her claim adjudicated on the merits. *Id., see also Beenken v. Chicago and Northwestern Railroad Co.,* 367 F.Supp. 1337, 1337 (N.D.Iowa 1973). "The

issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his claims." *Estate of Bailey By Oare v. County of York*, 768 F.2d 503 (3d Cir.1985) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

■ Motions for dismissal under Rule 12(b)(6) shall be treated as one for summary judgment and disposed of as provided in Rule 56 if matters outside the pleading are presented to and not excluded by the court. Fed.R.Civ.P. 12(b)(6). The plaintiffs and defendants have presented the Court with affidavits from plaintiff Edward Cohen, Cohen's attorney Gary Mucci, and defendant Bruce McAllister. The parties having been given reasonable opportunity to present pertinent materials, we will therefore convert this defendants' motion to dismiss the federal securities claim into one for summary judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if, upon a review of the materials properly before the court, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Summary judgment may properly be granted in the face of some alleged factual dispute between the parties because Rule 56(c) requires only that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). While a court must view the evidence in a light most favorable to the non-moving party, *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983), summary judgment must be granted "against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 2727 (Supp.1987).

## II. *Statute Of Limitations For Claims Under Section 10(b) And Rule 10b–5*

Since the issuance of our November 12, 1987 order and memorandum opinion in this action, the Third Circuit has settled on the proper statute of limitations to be applied for complaints charging violations of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1987). *In re: Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.1988). Sitting *en banc*, the Third Circuit held that the proper limitations period for such claims "is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." *Id.*, at 1550.

■ Violations of § 10(b) and Rule 10b–5 can take place before and up to the time when the sales of securities take place, but not after the investment is made.[2] The

---

**2.** Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j, reads as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5, 17 C.F.R. § 240.10b–5, states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

plaintiffs made their first investments in September, 1980. They made subsequent investments in the defendants' other limited partnerships in November of 1980, as well as in March and June of 1981. The statute of limitations here would run from the last investment, which was in June of 1981. Applying the Third Circuit's statute of limitations, this action should be time-barred one year after discovery and in no event after June, 1984, which was three years after the last violation. Thus, regardless of the date of discovery, it would seem that this action should be found untimely because the suit was not filed until April 15, 1987, notwithstanding the parties' agreement to toll the statute of limitations from August 20, 1986 to April 1, 1987.

### III. *Does The Fraudulent Concealment Doctrine Apply In This Case?*

The plaintiffs argue, and the defendants deny, that the statute of limitations in this case is tolled under the fraudulent concealment (or equitable tolling) doctrine. As we discussed at length in our November 12, 1987 Memorandum Opinion, under the fraudulent concealment doctrine the statute does not begin to run until the plaintiff knew or exercising reasonable diligence should have known of the alleged fraud. *Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605, 608 n. 3 (3d Cir.1980).

■ The Third Circuit explicitly stated that the period of limitations for § 10(b) and Rule 10b–5 claims was to be *"in no event* more than three years after such violation." *Data Access*, at 1550 [emphasis added]. The *Data Access* decision quoted *Norris v. Wirtz*, 818 F.2d 1329 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987), to explain the reasoning supporting the three-year limitation period:

The legislative history in 1934 makes it pellucid that Congress included statutes of repose because of fear that lingering

liabilities would disrupt normal business and facilitate false claims. It was understood that the three-year rule was to be absolute.

*Data Access*, at 1546 (quoting *Norris v. Wirtz*, 818 F.2d at 1332). In *Norris*, the Seventh Circuit supported the view that the fraudulent concealment doctrine was inapplicable to statutes of limitations for claims under federal securities laws. *Norris*, 818 F.2d at 1332–1333. The *Data Access* decision also quoted Judge Seitz, who dissented from the decision, that "the shorter period permits the company's management to treat a given securities transaction as closed, allowing them to proceed more confidently with running the company." *Id.* at 1546 (quoting *Roberts v. Magnetic Metals Co.*, 611 F.2d 450, 463 (3d Cir.1979) (Seitz, C.J., dissenting)). Thus, while the Third Circuit has yet to speak explicitly on the applicability of the fraudulent concealment doctrine to claims under § 10(b) and Rule 10b–5, there seems to be considerable support, particularly in the Circuits phrase "in no event ...," for the view that the doctrine does not apply.[3]

There is also an alternative basis for finding that the fraudulent concealment doctrine is inapplicable to this action. As we noted above, under the doctrine the statute does not begin to run until the plaintiff knew *or exercising reasonable diligence should have known* of the alleged fraud. *Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605, 608 n. 3 (3d Cir.1980). The evidence presented to the Court in this case shows that although McAllister's letters to the plaintiffs indicate that NFG's threats not to take gas without paying would violate the contract, as the controversy arose in January, 1983 one of the plaintiffs' attorneys requested and was supplied with a copy of the contract as well as a legal opinion letter from Howard, Rice, Nemerovski, Canady, Robertson & Falk. Because "take or pay" was

---

**3.** The view that the fraudulent concealment doctrine does not apply in this case flies in the face of Justice Frankfurter's statement that "[t]his equitable doctrine is read into every federal statute of limitations." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). Other courts have applied the doctrine to § 10(b) and Rule 10b–5 claims. Nonetheless, the plain language of the Third Circuit's *Data Access* decision requires us to accede to the absolute three year limitations period.

the focal issue of the controversy between the partnerships and NFG, we believe that had the Plaintiff and his attorney, Gary Mucci, exercised reasonable diligence they would have perused the contract and the opinion letter at that time to be informed on just what rights they held. A review of the contract quickly would have informed Cohen and Mucci that there was no "take or pay" provision in the contract. A careful reading of the Howard, Rice, Nemerovski, Canady, Robertson & Falk opinion letter reveals that there is no "take or pay" provision in the contract *per se.* Therefore, even if the doctrine of fraudulent concealment were to be applied to this particular statute of limitations, the plaintiffs' failure to read the contract or the legal opinion letter in January or February, 1983 when they were supplied by McAllister amounts to a failure to exercise reasonable diligence such that the plaintiffs should have known about the defendants' alleged fraud at that time. The statute of limitations would thus run three years from January or February, 1983, or until early 1986. Because this action was not commenced until April, 1987, and the agreement between the parties tolled the limitations period beginning in August, 1986, this cause of action would still be time-barred.

Basing our decision on one or both of these two alternative grounds, we conclude that the plaintiffs' claims under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission are time-barred. We will therefore grant summary judgment to the defendants on the question of whether these federal securities claims are untimely.

IV. *Dismissal of the Pendent State Claims For Lack of Subject Matter Jurisdiction*

■ Our dismissal of the only federal claims in this lawsuit raises the question of whether we should retain jurisdiction over the remaining pendent state claims. This Court has the power to hear a pendent claim when the federal claim has sufficient substance, when the state and federal claims derive from a common nucleus of operative fact and are such that one would ordinarily be expected to try them all in one judicial proceeding. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Pendent jurisdiction is a matter of discretion with the trial court, looking to "considerations of judicial economy, convenience and fairness to litigants," and seeking to avoid needless decisions of state law. *Id.* at 726, 86 S.Ct. at 1139.

In this case, we think that there is little in the way of potential convenience or judicial economy to outweigh the states' interest in adjudicating these state claims. *See Lentino v. Fringe Emp. Plans, Inc.,* 611 F.2d 474 (3d Cir.1979); C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3567.1 (1987 P.P.). We will therefore dismiss the remaining claims in this action for lack of federal subject matter jurisdiction.

### ORDER

AND NOW, this 22nd day of June, 1988, after careful consideration of the Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that:

1. Because matters outside the pleadings have been presented to and not excluded by this Court, we will treat the Defendants' Motion to Dismiss the claims under section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1987), as one for Summary Judgment pursuant to Federal Rule of Civil Procedure 56;

2. The Defendants' Motion for Summary Judgment on the Plaintiffs' claims under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1987), is GRANTED, and judgment on these claims is entered in favor of the Defendants Bruce McAllister and BMI Energy, Ltd., individually and as general partners of BMI/Wash-

ington 1980–II, BMI/Martha 1980–III, BMI/George 1980–I and BMI/Adams 1981–II, California limited partnerships, and against the Plaintiffs Edward Cohen, Alfred Cohen, Michael Cohen, the Estate of Judson Cohen, the Estate of Arthur Shapiro, Helen Shapiro, William Russell Shapiro, Alice Russell Shapiro, David Robbins and Lucille Robbins, individually and as limited partners of certain California limited partnerships;

3. The Defendants' Motion to Dismiss the remaining state claims in this action for lack of subject matter jurisdiction is GRANTED.