# MARSHALL–SILVER CONSTRUCTION COMPANY, INC. and Silver Construction Inc., Appellants,

v.

## MENDEL, M. Mark, Individually Murray, Daniel E., Individually M. Mark Mendel, LTD.

### No. 87–1187.

United States Court of Appeals, Third Circuit.

Argued Oct. 8, 1987.

Decided Dec. 9, 1987.

Rehearing and Rehearing En Banc Denied Jan. 5, 1988.

Richard M. Jordon (argued), David E. Sandel, Jr., White and Williams, Philadelphia, Pa., for appellants.

H. Robert Fiebach (argued), David I. Bookspan, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., for appellees.

Before WEIS and STAPLETON, Circuit Judges, and DIAMOND, District Judge.*

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

In this appeal, we once again confront the question of what constitutes a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. §§ 1961–1968 (1982 & 1986 Supp.) (RICO). Because we conclude that the allegations of racketeering activity in this case, even if proven to be true,

* Honorable Gustave Diamond, United States District Judge for the Western District of Pennsylvania, sitting by designation.

would be insufficient to support a finding that a pattern existed, we will affirm the order of the district court dismissing the complaint.

## I.

Plaintiff Marshall–Silver Construction Co., Inc. (Marshall–Silver)[1] is a general contractor that was engaged primarily in building nursing homes. Defendants M. Mark Mendel and Daniel Murray are shareholders and officers of Barton Engineering Co. (Barton), which is not a defendant here. Mendel and Murray are also attorneys; they are members of the law firm M. Mark Mendel, Ltd. (the Mendel firm), which is a defendant here. Mendel and the Mendel firm serve as Barton's attorneys.

Barton subcontracted business from Marshall–Silver during the first half of 1984. According to Marshall–Silver, Barton did not perform on its contracts on time or with acceptable work quality, and Marshall–Silver withheld payment as a result. Mendel had a stormy interview at Marshall–Silver on June 29, 1984 on the subject of the withheld payments; Mendel then wrote two strongly-worded letters, dated July 2, 1984 and July 3, 1984, in which he threatened to destroy Marshall–Silver unless it paid Barton for the latter's work. Despite these threats and the continued lack of payment to Barton, Mendel apparently took no further action for about six months.

On December 28, 1984, Barton filed a petition in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania, requesting that Marshall–Silver be put into involuntary bankruptcy. Marshall-Silver alleges that the allegations of the petition were false and that defendants knew them to be false. The press, including Dunn & Bradstreet and the Philadelphia Inquirer,

thereupon reported that Marshall–Silver was bankrupt. Marshall–Silver alleges that defendants contacted the press themselves to be sure that news of the bankruptcy was widely publicized. After the reports of bankruptcy, Marshall–Silver was unable to obtain the construction bonds it needed to conduct its business. As a result, it could neither complete certain ongoing projects nor submit bids on new ones. In this way, Marshall–Silver was allegedly put out of business by defendants.

The bankruptcy petition was filed in the names of Barton and two other subcontractors of Marshall–Silver's Nester Brothers (Nester) and R.J. Skelding Co. (Skelding). Allegedly, neither Nester nor Skelding authorized Barton to include them in the petition.

After the requisite notice and hearing, the bankruptcy court ordered that Barton, Nester, and Skelding post bonds totalling $850,000, Barton's share of this total being $750,000. None of the three posted a bond. As a result, the petition for involuntary bankruptcy was dismissed on February 8, 1985.

Marshall–Silver subsequently filed this suit charging defendants with violations of RICO and of various state laws. Defendants moved to dismiss under Fed.R.Civ.P. 12(b)(6) and the district court, without explanation, granted the motion as to all claims. Plaintiff appeals from that dismissal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982), and our review is plenary. We must accept as true all well-pleaded allegations of the complaint, and construe them in the light most favorable to the plaintiff; the dismissal may stand only if no set of facts in support of the

---

1. This designation of plaintiff was used throughout the district court proceedings. It includes both Marshall–Silver Construction Company and an affiliated corporation, Silver Construction Company. Defendants have attempted to make an issue out of the proper identity of the plaintiff, based on the facts that Silver Construction was only recently formed, that Marshall–Silver's name was changed to Silver Construction and then back to Marshall–Silver again, and that no harm to Silver Construction has been alleged. For purposes of this review, however, we accept the statement of Marshall–Silver's attorney that it can be shown that Marshall–Silver Construction Company, Inc. has been doing business as such all along. App. at 225.

claim could be proved which would entitle the plaintiff to relief. *Labov v. Lalley*, 809 F.2d 220, 221–22 (3d Cir.1987).

The allegations necessary to support a RICO claim under 18 U.S.C. § 1962, as set forth in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed. 2d 346 (1985), are (1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity. In addition, *Sedima* establishes that "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.* Defendants argue that Marshall–Silver has failed to properly allege an enterprise, racketeering activity, and a pattern. We find it necessary to address only defendant's argument regarding the absence of a pattern.

Under 18 U.S.C. § 1961(5), two predicate racketeering acts may be sufficient to constitute a pattern of racketeering activity. Specific predicate acts are listed in § 1961(1), and include any act which is indictable under the statutes prohibiting obstruction of justice (18 U.S.C. § 1503)[2] or mail fraud (18 U.S.C. § 1341),[3] as well as "any offense involving fraud connected with a case under title 11," the title pertaining to bankruptcy. 18 U.S.C. § 1961(1)(B), (D).

Marshall–Silver contends that defendants conducted the affairs of Barton through a pattern of racketeering activity consisting of the following predicate acts: knowingly and falsely including Nester and Skelding as creditors on the bankruptcy petition, causing a fraudulent bankruptcy petition to be filed, giving false testimony under oath at the bankruptcy hearing, falsely publicizing that Marshall–Silver was bankrupt, and

using the mails to transmit threatening letters and to further the false bankruptcy scheme.

Marshall–Silver further contends that the defendants, in the course of their efforts to drive it out of business through the institution of the fraudulent bankruptcy proceeding, violated Pennsylvania statutes that proscribe conspiracy and attempted theft by extortion (18 Pa.Cons.Stat.Ann. § 3923(a)(7)), threatening to inflict harm (18 Pa.Cons.Stat.Ann. §§ 901, 903), and making false and misleading statements (18 Pa.Cons.Stat.Ann. § 4107).

The latest guidance from the Supreme Court regarding the concept of a pattern of racketeering activity is found in the now famous footnote from the *Sedima* case, 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14. The Court there cautioned that "while two acts are necessary, they may not be sufficient." It went on to conclude that a pattern requires "continuity plus relationship":

The legislative history supports the view that two isolated acts of racketeering do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

This guidance has not resulted in uniform treatment of the pattern issue in the lower courts. The Court of Appeals for the Eighth Circuit has taken the strict view that no pattern can exist absent multiple fraudulent schemes or criminal episodes.

---

**2.** 18 U.S.C. § 1503 reads, in part:

Whoever corruptly ... endeavors to influence, intimidate, or impede any ... officer in or of any court of the United States ... in the discharge of his duty ... or corruptly ... influences, obstructs or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined ... or imprisoned ... or both.

**3.** 18 U.S.C. § 1341 reads, in part:

Whoever, having devised or intending to devise any scheme or artifice to defraud ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, ... any such matter or thing, shall be fined ... or imprisoned ... or both.

*See Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986) ("It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as 'a pattern of racketeering activity'"). Other federal courts of appeal have generally been less strict. *See, e.g., International Data Bank Ltd. v. Zepkin,* 812 F.2d 149, 154–55 (4th Cir.1987) (single limited scheme does not constitute a pattern but single large continuous scheme might); *California Architectural Bldg. Prods. Inc. v. Franciscan Ceramics Inc.,* 818 F.2d 1466, 1469 (9th Cir.1987) (single scheme with multiple fraudulent sales to multiple victims may constitute RICO pattern); *Bank of America Nat'l Trust & Savings Ass'n v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986) (nine predicate acts all part of a single scheme satisfy the pattern requirement after *Sedima*).

This court has dealt with the pattern issue on a number of occasions. In most of our decisions, we have found no need to define "pattern" specifically since the existence of one was clear under any definition of that term. *See Town of Kearny v. Hudson Meadows Urban Renewal Corp.,* 829 F.2d 1263 (3d Cir. Sept. 25, 1987); *Petro–Tech, Inc. v. Western Co. of N. Am.,* 824 F.2d 1349, 1351 (3d Cir.1987); *United States v. Grayson,* 795 F.2d 278, 288–90 (3d Cir.1986), *cert. denied sub nom. Robinson v. United States,* 107 S.Ct. 927, 93 L.Ed.2d 978 (1987); *Malley–Duff & Associates, Inc. v. Crown Life Insurance Co.,* 792 F.2d 341 (3d Cir.1986), *aff'd on other grounds sub nom. Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* —— U.S. ——, 107 S.Ct. 2759, 2763–64, 97 L.Ed.2d 120, 55 U.S.L.W. 4952, 4954, (1987). Recently, however, we were called upon to review a RICO case in which the "complaint ... arguably depict[ed] an unlawful venture more modest than those involved in our earlier cases." *Barticheck v. Fidelity Union Bank,* 832 F.2d 36, 38 (3d Cir. 1987). We there confronted and rejected the Eighth Circuit's position that a RICO pattern must involve at least two distinct unlawful schemes. We also rejected "the view that racketeering acts committed pursuant to a single scheme can constitute a

RICO pattern only if the scheme is potentially ongoing or open-ended." *Id.* at 39. In the course of rejecting this view, we explained our understanding of the concept of "continuity":

> We do not believe, however, that the notion of continuity compels a requirement of "open-endedness." At the very least, such a requirement would produce anomalous results. This approach would allow a party to maintain a RICO claim if he brought suit before the unlawful scheme had attained its objective; in such a case the scheme would presumably be considered open-ended. This same interpretation, though, would deny a RICO cause of action in a case where the scheme had fully accomplished its goal. Yet it is the completed scheme that inflicts the greater harm and more strongly implicates the remedial purposes of RICO.
>
> We read the legislative history's reference to "continuity" as simply calling for an inquiry into the extent of the racketeering activity. Although temporal open-endedness may be one measure of extent, it is not the only one. We decline to adopt a verbal formula for determining when unlawful activity is sufficiently extensive to be "continuous." This determination necessarily depends on the circumstances of the particular case.

*Id.* at 39. Factors relevant to the case-by-case analysis to which we referred in *Barticheck* include, but are not limited to, "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Barticheck,* at 39; *see also Petro–Tech* at 1355.

█ Applying this analysis to the case at bar, we find the allegations insufficient to meet the statutory requirement of a pattern. The target of the RICO statute, as its name suggests, is criminal activity that, because of its organization, duration, and objectives poses, or during its existence posed, a threat of a series of injuries over a

significant period of time. Here we have a single victim, a single injury, and a single, short-lived scheme with only two active perpetrators.[4] This is not criminal activity with the kind of continuity of which we spoke in *Barticheck.*

The Court of Appeals for the Seventh Circuit has recently reached the same conclusion in two cases presenting factual situations quite similar to the one before us. In *Marks v. Pannell Kerr Forster,* 811 F.2d 1108 (7th Cir.1987), the court observed:

> The multiple predicate acts by Pannell/Jaeger covered a short period of time (several months) and do not take on the character of being separate and distinct schemes in time and place. The acts alleged related to a single scheme to defraud a single victim in what appears to be a "one-shot" effort to inflict a single injury. Such a factual scenario simply fails to satisfy the continuity aspect of racketeering activity required by *Sedima.*

811 F.2d at 1112. Similarly, in *Lipin Enterprises, Inc. v. Lee,* 803 F.2d 322 (7th Cir.1986), there was only a single instance of fraud with only a single victim; the court concluded that "[w]hatever more is required to allege a pattern of racketeering activity, that something more is lacking here." 803 F.2d at 324.

Because the complaint does not allege a pattern of racketeering activity, the RICO claim was properly dismissed.[5] Absent the RICO claim, the sole federal claim, the district judge did not abuse his discretion in declining to exercise pendent jurisdiction over the state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### III.

For the foregoing reasons, we will affirm the judgment of the district court dismissing plaintiff's claims.

---

4. It is Mendel and Murray who are alleged to have conducted the affairs of Barton in such a way as to bring about the predicate acts. While the Mendel firm is also a defendant, it is alleged to have participated in the affairs of Barton only through the activities of these two individuals.

5. We reject plaintiff's claim that it should have been allowed to amend its complaint to include allegations of totally unrelated activities, namely Mendel's involvement in a case that is said to have been improperly handled by a Common Pleas Court judge. Allegations of predicate acts done in connection with that matter would fail, in the context of this suit, to meet either the requirement of relationship or that of continuity.