Claire M. BLOCH, Dante J. Casali, William L. Connelly, Jr. and Shirley J. Connelly, Ursula M. Corso, Robert J. Kuhn, Joseph C. Larkin, and Bernard A. Woods, Plaintiffs,

v.

PRUDENTIAL–BACHE SECURITIES, Robert M. Kolaczynski, Thomas McKewon, Ronald W. Theoret, Mark Lucero, Horse Power, Inc., Ralph J. Guyton, Sr., Ralph Guyton, Jr., Patrick Guyton, Melvin Pirchesky, Jeffrey W. Letwin, and Finkel, Lefkowitz, Ostrow & Woolridge, Defendants.

Civ. A. No. 88–935.

United States District Court, W.D. Pennsylvania.

Feb. 28, 1989.

Richard A. Finberg, Ellen M. Doyle, Berger Kapetan Malakoff & Meyers, P.C., Pittsburgh, Pa., for plaintiffs.

Ralph J. Kelly, Philadelphia, Pa., for defendant Prudential–Bache.

Thomas McKewon, pro se.

Richard R. Nelson, II, Pittsburgh, Pa., for Ronald W. Theoret.

S. Michael Streib, Pittsburgh, Pa., for defendant Mark Lucero.

Henry E. Rea, Jr., Pittsburgh, Pa., for defendant Horse Power, Inc. & Guytons.

Leonard Marsico, Pittsburgh, Pa., for defendant Pirchesky.

Arthur J. Murphy, Jr., James R. Schadel, and William R. Haushalter, Pittsburgh, Pa., for defendant Jeffrey Letwin.

Vincent J. Grogan, Kathryn L. Simpson, Pittsburgh, Pa., for defendant Finkel, et al.

## MEMORANDUM OPINION

MENCER, District Judge.

The plaintiffs in this action are investors who are asserting securities fraud and RICO claims against the defendants. Prudential–Bache Securities has filed a motion to dismiss based on the statute of limitations, failure to plead fraud with particularity, failure to allege a pattern of racketeering activity, and failure to state a claim. Finkel, Lefkowitz, Ostrow & Woolridge has filed a motion to dismiss based on failure to plead fraud with particularity and failure to allege a pattern of racketeering. Jeffrey Letwin joined the law firm's motions. These motions are presently before this court.

### I. *Facts*

The defendants in this case were all involved in the sale of limited partnership interests in a horse breeding operation known as Linden Creek Farms 1984–2, Limited Partnership (LCF). Horse Power, Inc. (HP) was the general partner of LCF, and four of the individual defendants were the principals of HP. Officers and brokers of the Pittsburgh office of Prudential–Bache Securities (Pru–Bache) promoted and sold units of LCF.

The plaintiffs allege that, in the course of promoting LCF, Pru–Bache brokers made misrepresentations designed to lure potential investors. Specifically, they allege that the brokers asserted that an investment in LCF was better than most limited partnership horse investments because LCF had herd insurance to protect investors. They allege that the brokers misrepresented both the purchase price of the horses and the amount of insurance for each horse. The plaintiffs also assert claims of kickbacks and distributions of proceeds that were not disclosed in the Private Placement Memorandum.

In 1986, a series of incidents triggering insurance liability led to the surfacing of the alleged misrepresentations. In May,

one of the newly born colts had to be destroyed because it broke its leg. In July, one of the brood mares died of illness while in foal. In August, three of the brood mares died in an automobile accident under allegedly suspicious circumstances on the last day of insurance coverage. The plaintiffs assert that they first received notice of the deficiencies in insurance coverage in September, 1986 when they were informed of the amount of insurance proceeds from the deaths. They filed their Complaint on April 26, 1988.

## II. *Legal Analysis*

### A. Statute of Limitations for § 10(b)

Pru–Bache asserts that the statute of limitations for actions under § 10(b) of the 1934 Act and Rule 10b–5 is one year from discovery with a maximum of three years from the violation. Pru–Bache argues that the plaintiffs have not alleged sufficient facts to toll the statute under the discovery rule, so the statute should begin to run when the Private Placement Memorandum was disseminated, November 15, 1984. Consequently, the statute would have run in November, 1987 at the latest. Even if the court invokes the discovery rule and tolls the statute until September, 1986, the statute would have run in September, 1987. Under either scenario, Pru–Bache argues, the Complaint is untimely.

In support of its arguments, Pru–Bache relies on *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.) (in banc), *cert. denied, Vitiello v. Kuhlowsky and Co.*, —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). In *Data Access*, the Third Circuit held that "the proper period of limitations for a complaint charging violation of section 10(b) and Rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." *Id.* at 1550.

The issue left unsettled in *Data Access* is whether courts should apply the statute of limitations retroactively to cases accruing before April 8, 1988, when *Data Access*

was decided. The majority did not address the issue of retroactivity, apparently because it concluded that the issue was not before the court. *Id.* at 1551.[1]

The general rule is that a court's decision acts retroactively. *Hill v. Equitable Trust Co.*, 851 F.2d 691, 695 (3d Cir.1988), *cert. denied, Data Controls North, Inc. v. Equitable Bank Nat. Assoc.*, —— U.S. ——, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989). Indeed, the structure of our legal system dictates that a decision is applied retroactively to the dispute it resolves; courts apply statutes, legal principles, and precedent to events that have already transpired. *Id.* Acknowledging that retroactivity may sometimes result in injustice, the Supreme Court created an exception to the general rule. In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Court outlined the conditions under which a decision would be applied only prospectively:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation." Finally, we have weighed the inequity imposed by retrospective application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of non-retroactivity."

*Id.* at 106–07, 92 S.Ct. at 355–56 (citations omitted). We will apply the three factors of the *Chevron* test to the facts before the court.

---

1. In dissent, Judge Seitz considered the retroactivity issue extensively and concluded that the case should only be applied prospectively.

1. *Status of the Law pre* Data Access

At both the time of the alleged misrepresentations and the time by which the plaintiffs were on inquiry notice of those misrepresentations, the Third Circuit had issued two important cases on the statute of limitations for § 10(b) actions. The issue was one of first impression in *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir. 1979). In the opinion of the court, Judge Gibbons wrote that courts should determine what state action is violated by the alleged behavior of the defendant, then apply the statute of limitations for that action. In the case *sub judice*, Judge Gibbons found that the facts stated a cause of action for New Jersey's common law fraud, so he applied the six year statute of limitations for fraud. In a concurring opinion, Judge Sloviter arrived at the same result under different reasoning. Judge Sloviter opined that the proper state statute to borrow was the one which best effectuated federal policies. *Id.* at 458. In dissent, Chief Judge Seitz favored an analysis that examined both the most analogous state action and whether the statute of limitations for that action effectuated federal policy. He found that the two year limitation under New Jersey's blue sky laws best satisfied both criteria. *Id.* at 461–63.

The other important Third Circuit case is *Biggans v. Bache Halsay Stuart Shields*, 638 F.2d 605, (3d Cir.1980). In *Biggans*, the majority again determined what causes of action were available to the plaintiff under state law, then determined which statute of limitations to apply. Under this analysis, the majority selected the six year limitation attendant with a common law fraud action. Judge Weis, dissenting, argued for application of the limitation from the state blue sky laws. Thus, the two important decisions in the Third Circuit both apply the six year statute of limitations for common law fraud.[2]

The difficulty with concluding that these cases establish "clear precedent on which litigants may have relied" is twofold. First, both *Roberts* and *Biggans* involved narrow factual situations; *Roberts* involved a "squeeze-out" merger and *Biggans* involved the "churning" of an account. Second, both opinions had strong dissents. Of the four judges who considered the issue, two (Gibbons and Sloviter) favored the limitation for common fraud and two (Seitz and Weis) favored the limitation for the state blue sky laws. Thus, the plaintiffs were not building their case on the most solid foundation if they were relying on Third Circuit precedent.

Several courts have already addressed the clarity of precedent predating *Data Access*. Of primary importance for this court is the Third Circuit opinion in *Hill v. Equitable Trust Co.*, 851 F.2d 691 (3d Cir. 1988). Writing for a unanimous court, Judge Weis conducted a full *Chevron* analysis and held that *Data Access* applied retroactively. He based this finding in large part on his determination that *Roberts* and *Biggans* did not create the requisite "clear precedent." *Id.* at 697–98. District courts in the Third Circuit have conducted independent analyses and arrived at the same result as that in *Hill. See, e.g., Bradford–White Corp. v. Ernst & Whinney*, 699 F.Supp. 1085 (E.D.Pa.1988); *Adelaar v. Lauxmont Farms, Inc.*, 695 F.Supp. 821 (M.D.Pa.1988); *Prospect Purchasing Co. v. Weber, Lipshie & Co.*, 694 F.Supp. 1149 (D.N.J.1988); *McCarter v. Mitcham*, 693 F.Supp. 349 (W.D.Pa.1988). Finally, we note that this court has already evaluated the Third Circuit case law on the statute of limitations for § 10(b) and found it unsatisfactorily unsettled and confusing. *Cohen v. McAllister*, 673 F.Supp. 733 (W.D. Pa.1987). Therefore, we conclude that the plaintiffs cannot satisfy the first *Chevron* factor for prospective application.

2. *Furthering Rule's Operation*

The circuit court also has evaluated whether retroactive application of *Data Ac-*

---

**2.** The Third Circuit also addressed the § 10(b) limitations period in *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). However, the court gave the issue only "abbreviated consideration" and concluded that the facts were indistinguishable from *Biggans. Id.* at 191–92. Thus, *Sharp* does not significantly focus or blur the clarity of the precedent.

*cess* would further or retard the purpose and effect of the limitation period. In both *Hill* and the dissent from *Data Access*, the circuit found that retroactive application had a neutral effect on the policies underlying the limitation period. We see no reason to reach any other result.

### 3. *Substantial Injustice*

The third factor of the *Chevron* test allows the court to avoid inequity or injustice. We have already determined that the status of the law was uncertain. The limitations period for common law fraud was two years when both the violation and the discovery occurred in this case. *Cohen v. McAllister*, 673 F.Supp. at 739. The limitations period under the blue sky laws was one year from the date of discovery, with a maximum of four years from the date of the violation. *Id.*

In this case, the date of discovery was in September, 1986 and the Complaint was filed in April, 1988. Thus, the Complaint would have been timely under one state statute and barred under the other. By waiting more than one year from the date of discovery, the plaintiffs were exposing themselves to a substantial risk of losing their claims. Therefore, we find that retroactive application does not produce any particular injustice.

### 4. *Conclusion*

■ In conclusion, we find that the plaintiffs have failed to meet the criteria in *Chevron* for prohibiting the retroactive application of *Data Access*. Therefore, this court will dismiss Count III of the Complaint as untimely.[3]

## B. Failure to Plead a RICO Violation

### 1. *Respondeat Superior*

Pru–Bache asserts in its Motion to Dismiss that the plaintiffs improperly name Pru–Bache in Count I based on vicarious liability for the acts of its employees. In its RICO Case Statement, the plaintiffs essentially admit that they base their claims against the brokerage house on secondary liability principles; in describing the alleged misconduct and basis of liability for Pru–Bache, the plaintiffs wrote, "At all times relevant hereto, Pru–Bache was a controlling person with respect to Defendants Kolaczynski, McKewon, Theoret and Lucero, and was responsible for supervising their activities as officers and/or account executives." Plaintiffs' RICO Case Statement at ¶ 2. Thus, the issue before this court is whether one may assert RICO liability against an employer under respondeat superior principles.

In support of its argument, Pru–Bache cites *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349 (3d Cir. 1987). A cursory reading of *Petro–Tech*, however, reveals that it does not preclude vicarious liability in all RICO cases. Rather, the circuit focused on the fact that the plaintiffs named the employer as both the RICO enterprise and as a person liable under § 1962(c). The court refused to apply respondeat superior under such circumstances, but stated that "we assume, however, there could be circumstances in which the common law of respondeat superior would hold an employer liable even when the employer did not benefit from the employee's conduct." *Id.* at 1359, n. 11. The other cases cited by Pru–Bache, *Leonard v. Shearson Lehman/American Express Inc.*, 687 F.Supp. 177 (E.D.Pa.1988), *Continental Data Systems, Inc. v. Exxon Corp.*, 638 F.Supp. 432 (E.D.Pa.1986), and *Halperin v. Berlandi*, 1988 WL 135413 (E.D.Pa. 1988), also rely on the incongruity of holding the enterprise liable under respondeat superior.

■ In this case, the plaintiffs allege that LCF was the enterprise. Plaintiffs' RICO Case Statement at ¶ 6. Thus, this case falls outside the rule in *Petro–Tech* and its progeny, and we will not grant the motion for summary judgment based on the plaintiffs' use of theories of vicarious liability in a RICO action.

---

**3.** The third count of the Complaint appears to be misnumbered. It is titled "COUNT II: DEFENDANT'S VIOLATION OF SEC. 10(b) OF THE EXCHANGE ACT." We assume that the plaintiff intended to label the third count as "COUNT III."

### 2. Predicate Acts

One of the requirements of a RICO action is that the defendants must have committed a violation of certain enumerated federal criminal statutes or any state criminal law punishable by imprisonment for more than one year. 18 U.S.C. § 1961. The underlying violation that forms the basis for the RICO action is called the "predicate act." In its RICO Case Statement, the plaintiffs list Mail Fraud, 18 U.S.C. § 1341, Wire Fraud, 18 U.S.C. § 1343, and Section 10(b) of the Exchange Act as predicate acts. Pru–Bache asserts that the securities fraud is the actual predicate act, and that the mail and wire frauds were part of the securities fraud scheme. It further asserts that it cannot be held liable for these predicate acts because the plaintiffs failed to state a claim for securities fraud against Pru–Bache and because the statute of limitations has run for any securities fraud action.

■ We find that Pru–Bache's position that the Complaint fails to state a claim for securities fraud is untenable. The Complaint identifies Pru–Bache as "a controlling person with respect to Defendants Kolaczynski, McKewon, Theoret and Lucero, and was responsible for supervising their activities as officers and/or account executives." Complaint at ¶ 9. Taking the complaint in the light most favorable to the plaintiffs, we find that they have stated a claim under § 20(a) of the '34 Act.

■ Similarly, we are not persuaded by Pru–Bache's argument that the action is time barred. It is clear from the case law that a RICO action is not precluded merely because an action in state court based on one of the predicate acts would be untimely. See, e.g., Agency Holding Corp. v. Malley–Duff & Assoc., 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Therefore, we will not dismiss Count I based on a failure to allege a predicate act.

### 3. Pattern of Racketeering

Another requirement of RICO is that the acts of the defendants constitute a "pattern of racketeering activity" under 18 U.S.C. § 1961(5). Both motions before the court ask us to dismiss Count II for failure to plead a pattern of racketeering.

In *Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36 (3d Cir.1987), the Third Circuit held that a case-by-case analysis should be undertaken to determine whether a pattern exists. The court found that the "continuity plus relationship" test to establish a pattern, as defined in *Sedima, S.R.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), is not based on the abstract characterization of racketeering acts as "continuous" and "related," but rather on a combination of factors. These factors are: (1) the number of unlawful acts; (2) the length of time over which the acts are committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity. *Id.* at 38–39. In *Barticheck*, the Third Circuit found the requisite pattern where a scheme involved the repetition of similar misrepresentations to more than twenty investors and carried out by several individuals and two separate entities. The court rejected the position that a RICO pattern must involve at least two distinct unlawful schemes. *Id.* at 39.

In *Marshall–Silver Construction Company, Inc. v. Mendel, et al.*, 835 F.2d 63 (3d Cir.1987), the Third Circuit found that the complaint failed to allege a pattern of racketeering activity. In that case, a dispute arose when the plaintiff, a general contractor, withheld payment from a subcontractor for poor work quality and late performance. The defendants, who were shareholders and officers of the subcontractor, were unsuccessful in obtaining payment from the plaintiff. The defendants filed a petition in Bankruptcy Court requesting that the plaintiff be placed in involuntary bankruptcy. As a result of media coverage of the alleged bankruptcy, the plaintiff lost business. The plaintiff alleged in its RICO suit that the defendants knowingly made false allegations in the bankruptcy petition and caused the plaintiff's downfall. The court noted:

[t]he target of the RICO statute, as its name suggests, is criminal activity that,

because of its organization, duration, and objectives poses, or during its existence posed, a threat of a series of injuries over a significant period of time. Here we have a single victim, a single injury, and a single, short-lived scheme with only two active perpetrators. This is not the continuity of which we spoke in *Barticheck.*

*Id.* 835 F.2d at 66–67.

In *Saporito v. Combustion Engineering Inc.,* 843 F.2d 666 (3d Cir.1988), the Third Circuit found a pattern where the perpetrators included the company and four of its officers, there were thirty-two acts (inducements to retire) and thirty-two victims, and the acts were identical in nature extending over a six-month time period. In both *Environmental Tectonics v. W.S. Kirkpatrick, Inc.,* 847 F.2d 1052, 1063 (3d Cir. 1988), and *U.S. v. Echeverri,* 854 F.2d 638, 649 (3d Cir.1988), the Third Circuit emphasized the requirements of comprehensiveness and criminal nature of the scheme as elucidated in *Marshall–Silver Construction Company, Inc. v. Mendel, et al.,* 835 F.2d 63 (3d Cir.1987).

In *Keystone Insurance Company v. Houghton,* 863 F.2d 1125 (3d Cir.1988), the Third Circuit, in discussing the statute of limitations, emphasized the continuing nature of the violation in a RICO claim from that of a simple predicate act claim. *Id.* at 1128. The court reemphasized the finding in *Barticheck* that the "most significant" factor in that case was the repetition of similar misrepresentations to more than twenty investors.

■ In their RICO Case Statement, the plaintiffs assert that there were at least twelve perpetrators involved in the scheme to defraud at least ten victims. Plaintiffs' RICO Case Statement at ¶ 5. They allege that various defendants made similar misrepresentations to the plaintiffs at various locations. They allege that the pattern began no later than November, 1984, extended over several years, and included solicitations for investments in a second fraudulent selling scheme. *Id.* We find that these allegations satisfy the pattern requirements in the Third Circuit.

## C. Common Law Fraud

■ In Count IV, the plaintiffs assert an action for common law fraud. Both Pru–Bache and Finkel, Lefkowitz, Ostrow & Woolridge moved to dismiss Count IV for failure to plead fraud with the particularity required under Fed.R.Civ.P. 9(b). After reviewing the record, we find that the Complaint and the RICO Case statement are sufficiently particular to satisfy Rule 9(b). The plaintiffs have generally alleged times, locations, and perpetrators for the misrepresentations, and have alleged knowledge or responsibility on the part of the movants. *See* Complaint at ¶¶ 9, 19, 20, 21–36, 37, 38; Plaintiffs' RICO Case Statement at ¶ 2.

## D. Violation of Regulations

Count VI of the Complaint presents a claim based on Pru–Bache's breach of its agreement to abide by the rules of the New York Stock Exchange (NYSE) and the National Association of Securities Dealers (NASD). The plaintiffs assert in their brief that investors are third party beneficiaries of the agreements between brokerage firms and the NYSE or NASD, and as such are entitled to enforce the rules.

It seems well settled that no direct cause of action exists for violations of self-regulatory organizations such as the NYSE or NASD. *See, e.g., Jablon v. Dean–Witter & Co.,* 614 F.2d 677 (2d Cir.1980); *Newman v. Rothschild,* 651 F.Supp. 160 (S.D.N.Y. 1986); *Binkley v. Shaeffer,* 609 F.Supp. 601 (E.D.Pa.1985).

The plaintiffs rely on a narrow line of cases within the Second Circuit which hold that a violation of the regulatory rules can create a private cause of action. *See State Teachers Retirement Board v. Fluor Corp.,* 654 F.2d 843, 851 (2d Cir.1981); *Van Gemert v. Boeing,* 520 F.2d 1373, 1382, n. 19 (2d Cir.), *cert. denied,* 423 U.S. 947, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975); *Weinberger v. New York Stock Exchange,* 335 F.Supp. 139, 144 (S.D.N.Y.1971).

■ Third party enforcement of the rules of a self-regulatory organization has

been considered and rejected in this district. In *Pittsburgh Terminal Corp. v. Baltimore and Ohio R. Co.,* 509 F.Supp. 1002 (W.D.Pa.1981), *rev'd on other grounds,* 680 F.2d 933 (3d Cir.), *cert. denied,* 459 U.S. 1056, 103 S.Ct. 475, 74 L.Ed.2d 621 (1982), the court refused to allow a third party claim for violations of NYSE rules. *Id.* at 1016–17. Although we are not bound by the holding in *Pittsburgh Terminal,* third party beneficiary liability seems incongruous with the large body of case law holding that no private cause of action exists for violation of the rules of self-regulatory organizations. Therefore, we will grant the motion to dismiss Count VI.

### ORDER

AND NOW, this 28th day of February, 1989, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that:

(1) The Motion to Dismiss filed by Prudential–Bache Securities is GRANTED in part and DENIED in part;

(2) The Motion to Dismiss filed by Finkel, Lefkowitz, Ostrow & Woolridge and joined by Jeffrey W. Letwin is GRANTED in part and DENIED in part;

(3) Count III of the Complaint, entitled "Defendant's Violation of Sec. 10(b) of the Exchange Act" and beginning on page 18 of the Complaint is DISMISSED as to all defendants;

(4) Count VI is DISMISSED as to all defendants; and

(5) The motions to dismiss are DENIED in all other respects.

(6) A Status Conference is hereby scheduled before the undersigned for Tuesday, March 14, 1989 at 4:00 p.m., Room 620, United States Courthouse, Pittsburgh, Pennsylvania.